# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No.: 1:21-cv-235-DAE |
| PAUL W. HAARMAN, PATRICK E. DUKE, and APEG ENERGY GP, LLC, | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENT AS TO ALL DEFENDANTS

Dated: September 30, 2025.

Respectfully submitted,

*/s/ Tyson M. Lies*
TYSON M. LIES
Texas Bar No. 24087927
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Ph: 817-978-1421
Fax: 817-978-4927
liest@sec.gov

ATTORNEY FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii-v

I.    PROCEDURAL BACKGROUND AND SUMMARY OF REQUESTED RELIEF ......... 1

    A.  This Court has already concluded that Defendants operated as investment
        advisers who violated the federal securities laws ...................................... 2

    B.  Defendants solicited investors by promising they would use 100% of investor
        funds to "identify, purchase, hold, and sell" investments ........................... 2

    C.  Defendants took undisclosed fees ............................................................ 4

    D.  Defendants acted with scienter and breached their fiduciary duties to the Fund ........ 4

II.   ARGUMENT ............................................................................................. 5

    A.  The Court Should Permanently Enjoin Defendants from Future Violations of the
        Securities Laws on Which the Court Granted Summary Judgment ......................... 5

        1.  The SEC has succeeded on the merits of its claims ....................................... 6

        2.  There is a likelihood that irreparable harm will result if an injunction is not
            granted ................................................................................................ 6

            a.  Defendants' conduct was egregious ............................................... 7

            b.  Defendants' violations were recurrent ............................................ 8

            c.  Defendants acted with a high degree of scienter ............................ 8

            d.  Defendants do not sincerely recognize their transgressions ........... 8

            e.  Defendants' jobs provide the opportunity for future violations
               of the securities laws ..................................................................... 9

        3.  The balance of equities and public interest favor the Commission ............... 9

        4.  The injunction is in the public interest .......................................................... 10

    B.  The Court Should Order Haarman and Duke to Disgorge and Pay Prejudgment
        Interest on their Ill-Gotten Gains ........................................................................ 10

    C.  The Court Should Impose Civil Penalties against Haarman and Duke ................... 13

CONCLUSION ...................................................................................................... 15

# TABLE OF AURTHORITIES

**Cases**

*FTC v. Silueta Distribs.*,
No. C 93-4141 BAC, 1994 WL 387881 (N.D. Cal. July 11, 1994) ........................... 6

*FTC v. Your Yellow Pages, Inc.*,
No. 14-CV-22129, 2014 WL 12537140 (S.D. Fla. July 1, 2014) ........................... 6

*Liu v. SEC*,
591 U.S. 71 (2020) ...................................................................... 10, 11, 12

*SEC v. AMX, Int'l*,
7 F.3d 71 (5th Cir. 1993) .................................................................. 11

*SEC v. Blackburn*,
15 F.4th 676 (5th Cir. 2021) ............................................................... 12

*SEC v. Blatt*,
583 F.2d 1325 (5th Cir. 1978) ............................................................... 7

*SEC v. Chappell*,
107 F.4th 114 (3d Cir. 2024) .......................................................... 5, 6, 10

*SEC v. Evolution Capital Advisors, L.L.C.*,
No. H-11-2945, 2013 WL 5670835 (S.D. Tex. Oct. 16, 2013) ............................... 12

*SEC v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989) ............................................................ 11

*SEC v. Fox*,
No. 4:17-CV-271, 2018 WL 1210858 (E.D. Tex. Mar. 8, 2018) ........................... 14

*SEC v. Gann*,
565 F.3d 932 (5th Cir. 2009) ............................................................... 7

*SEC v. Gentile*,
939 F.3d 549 (3d Cir. 2019) ................................................................ 6

*SEC v. Gunn*,
No. 3:08-CV-1013-G, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ..................... 12

*SEC v. Hallam*,
42 F.4th 316 (5th Cir. 2022) .............................................................. 11

*SEC v. Helms*,
No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ................ 11, 12

*SEC v. Jaitley*,
No. 1:21-cv-832-DAE, 2024 WL 5118487 (W.D. Tex. Nov. 26, 2024) .................... 15

*SEC v. Kern*,
  425 F.3d 143 (2d Cir. 2005) ......................................................................... 13-14

*SEC v. Lake Havasu Estates*,
  340 F. Supp. 1318 (D. Minn. 1972) ..................................................................... 6

*SEC v. Life Partners Holdings, Inc.*,
  71 F. Supp. 3d 615 (W.D. Tex. 2014) ................................................................. 14

*SEC v. Manor Nursing Centers, Inc.*,
  458 F.2d 1082 (2d Cir. 1972) ............................................................................... 9

*SEC v. Meta 1 Coin Tr.*,
  No. 1:20-cv-273-RP, 2023 WL 3069768 (W.D. Tex. Feb. 7, 2023)...................... 15

*SEC v. Morris*,
  No. 3:20-CV-02958-B, 2022 WL 9497046 (N.D. Tex. Oct. 14, 2022) .................. 11

*SEC v. Murphy*,
  626 F.2d 633 (9th Cir. 1980) ........................................................................... 7, 8

*SEC v. Offill*,
  No. 3:07-CV-1643-D, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) ................. 14-15

*SEC v. Patel*,
  61 F.3d 137 (2d Cir. 1995) ................................................................................ 11

*SEC v. Razmilovic*,
  822 F. Supp. 2d 234 (E.D.N.Y. 2011) ................................................................ 14

*SEC v. Rodriguez*,
  No. EP-24-CV-27-KC, 2025 WL 2265475 (W.D. Tex. Aug. 7, 2025) .................. 10

*SEC v. United Energy Partners, Inc.*,
  88 F. App'x 744 (5th Cir. 2004) ........................................................................ 12

*SEC v. Voight*,
  No. H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) .................. 11, 12, 13

*SEC v. Zale Corp.*,
  650 F.2d 718 (1981) ........................................................................................... 7

*Starbucks Corp. v. McKinney*,
  144 S. Ct. 1570 (2024) ........................................................................................ 5

*United States v. Kahen*,
  No. CV 20-00474, 2020 WL 1697974 (E.D.N.Y. Jan. 28, 2020) ........................... 6

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ..................................................................................... 5, 9, 10

**Securities Act of 1933**

Section 17(a)
[15 U.S.C. § 77q(a)] ...........................................................................................6, 10

Section 20(b)
[15 U.S.C. § 77t(b)]...................................................................................................5

**Securities Exchange Act of 1934**

Section 10b
[15 U.S.C. § 78j(b)] ...........................................................................................6, 10

Section 21(d)(3)(A)(ii)
[15 U.S.C. § 78u(d)(3)(A)(ii)]..................................................................................10

Section 21(d)(5)
[15 U.S.C. § 78u(d)(7)] ............................................................................................10

Section 21(d)(7)
[15 U.S.C. § 78u(d)(7)] .......................................................................................5, 10

**Securities Advisers Act**

Sections 206(1)
[15 U.S.C. § 80b-6(1)] .......................................................................................6, 10

Sections 206(2)
[15 U.S.C. § 80b-6(1)] .......................................................................................6, 10

Section 209(d)
[15 U.S.C. § 80b-9(d)] ..............................................................................................5

Section 209(e)
[15 U.S.C. § 80b-9(e)]..............................................................................................13

**Securities Exchange Act of 1934 Rules**

Rule 10b-5(b)
[17 C.F.R. § 240.10b-5] .....................................................................................6, 10

[17 C.F.R. § 201.1001]..............................................................................................13

Plaintiff Securities and Exchange Commission ("Plaintiff" or "the SEC") files this Motion for Remedies and for Entry of Final Judgment, and respectfully shows as follows:

## I.
## PROCEDURAL BACKGROUND AND SUMMARY OF REQUESTED RELIEF

On March 7, 2025, the Court entered its Order Granting in Part and Denying in Part Plaintiff's Partial Motion for Summary Judgment ("MSJ Order"). *See* Dkt. No. 82. On June 9, 2025, the Court entered its Order Granting in Part and Denying in Part Motion for Clarification or Reconsideration ("MSJ Clarification Order") clarifying the MSJ Order. *See* Dkt. No. 89. These orders found Defendants Patrick E. Duke ("Duke") and APEG Energy GP, LLC ("APEG") liable for violations of Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") and Rule 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5(b) thereunder, and Defendants Duke, APEG, and Paul W. Haarman ("Haarman") (collectively, "Defendants") liable for violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

Based on Defendants' violations and on the record of this case,[1] the Commission requests that the Court issue an order and enter a final judgment that:

(1) Permanently enjoins and restrains Defendants from future violations of Sections 206(1) and (2) of the Advisers Act;

(2) Permanently enjoins and restrains Duke and APEG from future violations of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder;

(3) Orders Haarman and Duke to disgorge their respective ill-gotten gains received as a

---

[1] In support of this motion, Plaintiff attaches as Exhibit 1, and fully incorporates herein, the Declaration of SEC Supervisory Accountant Melvin Warren ("Warren Dec.").

result of wrongdoing, along with prejudgment interest, in the following amounts:

| Defendant | Disgorgement | Prejudgment Interest |
|---|---|---|
| Patrick E. Duke | $1,326,875 | $741,730.90 |
| Paul W. Haarman | $1,326,675 | $741,616.24 |

(4) Orders Haarman and Duke to pay civil penalties in the following amounts equal to their

gross pecuniary gains:

| Defendant | Civil Penalties |
|---|---|
| Patrick E. Duke | $1,326,875 |
| Paul W. Haarman | $1,326,675 |

## FACTUAL BACKGROUND

**A.    This Court has already concluded that Defendants operated as investment advisers who violated the federal securities laws.**

In the MSJ Order, this Court concluded that the undisputed summary judgment evidence

proves as a matter of law that Haarman and Duke used APEG, a Texas-based investment adviser

that Haarman and Duke controlled, to violate the federal securities laws.  Doc. 82, MSJ Order at 20,

30.  APEG was the general partner of APEG Energy, LP (the "Fund"), an investment opportunity

offered under the umbrella of an entity Haarman and Duke jointly owned and exclusively controlled.

*Id.* at 2-3.  From its inception, Duke and Haarman (via APEG) exercised complete control over the

Fund.  *Id.* at 3.

**B.    Defendants solicited investors by promising they would use 100% of investor funds to "identify, purchase, hold, and sell" investments.**

Defendants first started soliciting investors in the Fund in December 2015.  *Id.*  As part of

these solicitations, they contributed to, reviewed, approved, and circulated a Private Placement

Memorandum ("PPM"), which included an Agreement of Limited Partnership for the Fund

("Partnership Agreement").  *Id.*  These documents vested APEG (and, thus, Haarman and Duke)

2

with complete control over the Fund's management and operations, including investment decisions. *Id.* at 4.  The PPM and Partnership Agreement made various representations regarding the Fund's use of investor funds and investors' anticipated returns, including, but not limited to, the following:

(1) Both the PPM and the Partnership Agreement stated that investors would receive, based on the Fund's performance, certain annualized distributions, including a quarterly distribution equal to 10% of capital contributions and a final distribution upon liquidation equal to 15% of capital contributions;

(2) The Partnership Agreement explicitly authorized a management fee, payable to Defendants, of 2% of the Fund's "asset value."

(3) The PPM also indicated that the Defendants would "use *one hundred percent* (100%) of the proceeds from the Offering, after payment of Partnership expenses, to identify, purchase, hold, and sell or otherwise dispose of Portfolio Securities.[2]

*Id.* at 4-5 (emphasis in original).

Within the PPM, Defendants also made various representations regarding Duke's and Haarman's backgrounds.  *Id.* at 8-9.  Defendants provided detailed information regarding Duke's professional experience and financial expertise.  *Id.*  They failed, however, to include facts that would be material to investors, including (1) that Duke and his company Duke Capital Management had been sued by an investor for securities fraud and breach of fiduciary duty and (2) that Duke had filed for bankruptcy 10 years prior.  *Id.* at 8-9, 14.  Defendants also represented (3) that Duke "worked for the Texas Railroad Commission which is the Oil and Gas regulatory Agency for the State," but failed to disclose Duke's time at the Texas Railroad Commission had been more than 35 years prior, as a high school clerk.  *Id.* at 9, 14.

Defendants ultimately raised $17.4 million from 115 investors through the sale of limited partnership interests in the Fund.  *Id.* at 3.

---

[2] The Partnership Agreement defined potential investments in the energy sector as "Portfolio Securities," which included "without limitation, stocks, bonds, debt, options, commodities and derivatives." Doc. 82, MSJ Order at 3.

C.    **Defendants took undisclosed fees.**

Defendants acted as investment advisers for the Fund, as defined under the Advisers Act, by identifying, facilitating the acquisition of, and managing all of the Fund's investments. *Id.* at 24-25. Haarman and Duke exercised complete control over the Fund during the relevant period, and they received compensation for their advisory work. *Id.* at 3-5, 24-25. This compensation took two forms: First, in 2016 and 2017, the Fund paid APEG management fees totaling more than $724,000. *Id.* at 4. Second, between January 2016 and October 2016, Haarman and Duke received payments totaling $2,563,550, either directly or through their ownership in APEG and related entities, in connection with five separate transactions that they arranged on behalf of the Fund. *Id.* at 5; Ex. 1, Warren Dec. ¶¶ 8-19 [APP. 004-8]. Defendants characterized these payments as "bonuses" or "fees" but did not disclose them to investors contemporaneously with the transactions. *Id.* at 5-7.

In August 2017, over a year after the final of the five transactions occurred, Defendants retained an accounting firm to audit the Fund's financial statements as of December 31, 2016. *Id.* at 7. The auditor's report, completed in December 2017, disclosed for the first time all except for $200,000 of the above bonuses/fees as "Related Party Transactions." *Id.* Defendants admit that they received $2,563,550 in fees, even though the Auditor's report disclosed only $2,363,550 in fees. *Id.*

D.    **Defendants acted with scienter and breached their fiduciary duties to the Fund.**

As this Court found within the MSJ Order, Defendants knew, or were severely reckless in not knowing, that they violated the Adviser's Act. *Id.* at 28-30. Under the guise of acquiring investment assets on behalf of the Fund, Haarman and Duke violated their fiduciary duties by selecting and structuring investments so that they could reap more than $2.5 million in undisclosed compensation. *Id.* at 26-27. Defendants then failed to disclose these fees or the conflicts of interest

4

they created until well after the offending transactions closed and after the investors had already

invested in the Fund. *Id.* at 27-29. Defendants Duke and APEG similarly acted with scienter in

failing to make proper disclosures regarding Duke's background. *Id.* at 18.

## II.
## ARGUMENT

**A.    The Court Should Permanently Enjoin Defendants from Future Violations of the
Securities Laws on Which the Court Granted Summary Judgment.**

Under Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], Section 21(d) of the

Exchange Act [15 U.S.C. § 78u(d)], and Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], the

district court shall impose a permanent injunction against a defendant upon a showing that the

defendant is engaged or is about to engage in any acts or practices that violate these respective

statutes. To obtain a permanent injunction against future violations of the securities laws, the

Commission must demonstrate the following factors: (1) the Commission has actually succeeded

on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance

of the equities tips in the Commission's favor, and (4) the injunction is in the public interest. *See*

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (factors pertinent in assessing

preliminary or permanent injunctive relief); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576

(2024) (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong

presumption that courts will exercise that authority in a manner consistent with traditional

principles of equity," which, with regard to injunctive relief, includes using "the traditional four-

part test" set forth in *Winter*); *SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024) (applying *Starbucks*

to a Commission enforcement action).

Each of the four factors supports permanent injunctive relief against Defendants.

1.  **The SEC has succeeded on the merits of its claims.**

The Court granted in part the SEC's motion for partial summary judgment and found, as a matter of law, that Defendants violated Sections 206(1) and 206(2) of the Advisers Act and, with regards to Duke and APEG, Section 17(a)(2) of the Securities Act, Section 10b of the Exchange Act, and Rule 10b-5(b) thereunder.  Doc. 82, MSJ Order, at 20, 29-30; Doc. 89, Clarification Order at 4.  The SEC has therefore succeeded on the merits of its claims.

2.  **There is a likelihood that irreparable harm will result if an injunction is not granted.**

The likelihood of irreparable harm is demonstrated by the Commission's having shown (see below) the likelihood of a defendant's future violations.  To obtain an injunction against further securities law violations the Commission must show a "likelihood of recurrence" (*SEC v. Gentile*, 939 F.3d 549, 555-58 (3d Cir. 2019)), and such "cognizable risk of future harm" satisfies the "irreparable harm requirement."  *Chappell*, 107 F.4th at 128-29 (discussing *Gentile*).  District courts granting injunctions under the four-part test have also recognized that the government's showing of a likelihood of future violations satisfies the irreparable harm requirement.  *See, e.g.*, *FTC v. Your Yellow Pages, Inc.*, No. 14-CV-22129, 2014 WL 12537140, at *1 (S.D. Fla. July 1, 2014) ("There is good cause to believe that immediate and irreparable harm will result from continued violations by [defendant] of the FTC Act [. . .] unless he is restrained and enjoined[.]"); *FTC v. Silueta Distributors, Inc.*, No. 93-CV-4141, 1994 WL 387881, at *1-*2 (N.D. Cal. July 11, 1994) (finding the "substantial risk of irreparable harm to the public from defendants' continuing violations of law").  Even courts that previously concluded irreparable harm is unnecessary in government enforcement actions have alternatively held that demonstrating a likelihood of future violations is sufficient to satisfy the irreparable harm requirement.  *See, e.g.*, *SEC v. Lake Havasu Ests.*, 340 F. Supp. 1318, 1324 (D. Minn. 1972); *United States v. Kahen*, No. 20-CV-00474, 2020

WL 1697974, at *1 (E.D.N.Y. Jan. 28, 2020).

In determining whether there is a reasonable likelihood of future violations, courts consider the following factors:

> (1)    the egregiousness of the defendant's conduct;
> (2)    the isolated or recurrent nature of the violation;
> (3)    the degree of scienter;
> (4)    the sincerity of defendant's recognition of his transgression; and
> (5)    the likelihood of the defendant's job providing opportunities for future violations.

*SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).  The existence of past violations of federal securities laws may give rise to an inference that there will be future violations and the fact that a defendant is currently complying with the securities laws does not preclude an injunction. *Blatt*, 583 F.2d at 1335; *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Defendants' misconduct supports the entry of permanent injunctions.

### a.  Defendants' conduct was egregious.

As investment advisers, Defendants had a duty to timely disclose any conflicts of interest to investors.  *Id.* at 26.  Regardless, Defendants orchestrated five separate transactions through which they paid themselves fees totaling over $2.5 million.  *Id.* at 5.  Defendants did not disclose these fees until a year after the final transaction, when an auditor—*not* Defendants—disclosed the fees in its auditing report.  *Id.*  The egregiousness of Defendants' actions is further underscored by the facts that (1) the PPM promised investors that "100% of the proceeds from the Offering, after payment of Partnership expenses, [would be used] to identify, purchase, hold, and sell or otherwise dispose of Portfolio Securities" and (2) investors never recovered their initial capital contributions.  *Id.* at 4-5, 10; *see also* Ex. 2, Duke Depo. at 260:7-12 [APP. 017].   Separately, Defendants Duke and APEG acted egregiously when they touted Duke's credentials yet failed to disclose that Duke had been

sued for securities fraud, had personally filed for bankruptcy, and had only worked for the Texas Railroad Commission for a short time more than three decades prior. Doc. 82, MSJ Order at 8-9.

### b. Defendants' violations were recurrent.

Over the course of ten months, Defendants repeatedly breached their fiduciary duty to investors, paying themselves a bonus or fee with each separate transaction. *Id.* at 5-7. Each time they received fees, Defendants did not disclose them to investors. *Id.* Only after an auditor reviewed the Fund's documents and issued a report were investors apprised of the fees. *Id.* at 7.

### c. Defendants acted with a high degree of scienter.

As this Court noted in its MSJ Order, the undisputed evidence shows that Defendants "knew of their economic conflicts of interest and receipt of undisclosed and belatedly disclosed fees but nevertheless failed to disclose any of those fees" for over a year after the final transaction. *Id.* at 28. Defendants went so far as to structure deals to "bake in" consulting fees for themselves as part of each transaction. *Id.* at 29. These actions demonstrate that Defendants acted with, at least, severe recklessness, and, indeed, took deliberate steps to ensure that they were paid regardless of the inherent conflicts of interest in the way the transactions were structured. *Id.* Duke's and APEG's scienter is further demonstrated by the fact that "the danger of misleading potential investors as to his background would have been obvious to Duke" yet Duke and APEG continued to provide a positive—and incomplete—picture of his background. *Id.* at 18.

### d. Defendants do not sincerely recognize their transgressions.

There is no evidence in the summary judgment record indicating that the Defendants have acknowledged the seriousness of their violations or the investor harm they caused. To the contrary, Haarman and Duke view taking undisclosed fees as common and appropriate. *See, e.g.*, Ex. 3, Haarman Depo at 97:20-21 ("Every -- every deal we've ever done – and this is standard and it's

widely accepted.") [APP. 021], 129:9 ("[T]his is something that was customary.") [APP. 022]; Ex. 2, Duke Depo. 124:12-22, 155:8-24 (stating that "customary" fees were not disclosed contemporaneously with transactions, but that they were later disclosed in audited financials) [APP. 014-15].

> **e. Defendants' jobs provide the opportunity for future violations of the securities laws.**

Defendants' positions certainly provide opportunities for them to once again violate the securities laws. Online profiles indicate that both Haarman and Duke continue to operate in the private equity industry that led to the fraud at the heart of this case. Haarman's online profile indicates that he continues to work through his company, Shift Capital Partners, which describes itself as "a private equity firm operating for a very exclusive group of private investors." *See* Shift Capital Partners, About (last visited on August 2, 2025), https://shiftcapitaltx.com/about. Similarly, Duke continues his work through his company DynEvolve, a boutique private equity shop specializing in multifamily real asset investment. Ex. 2, Duke Depo. 21:12-20, 23:5-11 (authenticating website) [APP. 012-13]; Ex. 4, Dynevolve Website [APP. 026] (describing Dynevolve as "bespoke private equity firm in the lower middle-market").

> **3. The balance of equities and public interest favor the Commission.**

The third *Winter* factor (balancing the equities) is easily met here. The equities specifically favor the Commission because "investors need[ ] the protection of an injunction" notwithstanding the private interests of the defendant, especially in light of the likelihood of their future fraud violations. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972), *abrogated on other grounds*, *SEC v. Ahmed,* 72 F.4th 379, 406-07 (2d Cir. 2023). Defendants' repeated violations of the federal securities laws, failure to acknowledge wrongdoing, as well as their apparent continued involvement in the private equity industry, weigh heavily in favor of injunctive

relief to protect investors.  By contrast, Defendants will face minimal burdens in being required to comply with injunctive relief that restrains them from violating the federal securities laws.  *See SEC v. Rodriguez*, No. EP-24-CV-27-KC, 2025 WL 2265475, at \*4 (W.D. Tex. Aug. 7, 2025) (concluding that equities weighed in favor of granting permanent injunction given the likelihood of future violations and the minimal burden on defendant to obey the law).

### 4.  The injunction is in the public interest.

"As a practical matter, if a plaintiff demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, 107 F.4th at 139 (quotation omitted).  Indeed, the public interest in enforcing Congress's antifraud provisions favors enjoining Defendants here.  *Rodriguez*, 2025 WL 2265475, at \*4.

The four *Winter* factors having been met, Defendants should be enjoined from violating Sections 206(1) and 206(2) of the Advisers Act and Defendants Duke and APEG should be enjoined from violating Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

### B.  The Court Should Order Haarman and Duke to Disgorge and Pay Prejudgment Interest on their Ill-Gotten Gains.

This Court may order disgorgement of a defendant's ill-gotten gains causally connected to his securities law violations.  A disgorgement award "that does not exceed a wrongdoer's net profits and is awarded for victims" is permissible equitable relief under Section 21(d)(5) of the Exchange Act.  *Liu v. SEC*, 591 U.S. 71, 74-75 (2020).  Disgorgement is also authorized under amendments to the Exchange Act that Congress enacted after *Liu*.  *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."); 15 U.S.C. § 78u(d)(3)(A)(ii) (granting jurisdiction to "require disgorgement [. . .] of any unjust enrichment by

the person who received such unjust enrichment as a result of such violation.").  The Fifth Circuit has stated that the new provisions "authorize legal 'disgorgement' apart from the equitable 'disgorgement' permitted by *Liu*."  *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022).  But the Court also stated that the amendments "ratif[y] the pre-*Liu* disgorgement framework used by every circuit court of appeals."  *Id.* at 338; *see also SEC v. Morris*, No. 3:20-CV-02958-B, 2022 WL 9497046, at *3-4 (N.D. Tex. Oct. 14, 2022) (discussing *Hallam*).  In this case, any difference in approach between legal disgorgement and equitable disgorgement is immaterial.

The Court must order disgorgement "that does not exceed a wrongdoer's net profits" and excludes "legitimate expenses."  *Hallam*, 42 F.4th at 342; *Liu*, 140 S. Ct. at 1940.  The Court has broad discretion in determining the amount of disgorgement.  *See, e.g.*, *SEC v. Helms*, No. 1:13-CV-01036, 2015 WL 5010298, *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)).

Once the Commission presents evidence reasonably approximating the amount of defendants' ill-gotten gains, the burden of proof shifts to defendants.  *Hallam*, 42 F.4th at 342.  Defendants are then obliged to show "a clear break in or considerable attenuation of the causal connection between the illegality and the ultimate profits."  *Hallam*, 42 F.4th at 342.  Any risk of uncertainty in calculating disgorgement falls on the wrongdoer whose illegal conduct created the uncertainty.  *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995); *SEC v. Voight*, No. H-15-2218, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting *SEC v. First City Fin'l Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

The Commission seeks disgorgement from the Defendants in the following amounts: $1,326,675 (Haarman); and $1,326,875 (Duke).  *See* Ex. 1, Warren Dec. at ¶¶ 6, 20-25 [APP. 003-4, 9].  These disgorgement amounts represent the total amounts of ill-gotten gains that Haarman

and Duke respectively received as a result of the violative conduct—i.e., each received approximately half of the $2,563,550 in undisclosed bonuses and fees from the five transactions identified above.  *Id.*  No affirmative evidence in the record disputes the reasonableness of this amount, and any risk of uncertainty should fall on Defendants, whose illegal conduct created the uncertainty.  *Voight*, 2021 WL 5181062, at *7.

The Commission seeks disgorgement of these amounts so that it may return these funds to investors who lost significant sums of money when they invested in this fraudulent scheme.  *See SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (finding *Liu*'s "awarded for victims" language satisfied by the SEC's representation that "money the defendants return will go to the harmed investors") (internal quotation marks omitted).  Should Defendants pay the disgorgement amount ordered by the Court, the Commission expects that it will be in a position to distribute the funds to the known victims of Defendants' fraud.

The Court should also award prejudgment interest ("PJI") on the disgorgement amounts— determined using the IRS's rate charged for the underpayment of income tax.  *See, e.g.*, *Helms*, 2015 WL 5010298, at *19.  An award of PJI is appropriate because it prevents wrongdoers from benefitting from what is, in effect, an interest-free loan resulting from their illegal activity.  *SEC v. Evolution Capital Advisors, LLC*, H-11-2945, 2013 WL 5670835, at *3 (S.D. Tex. Oct. 16, 2013); *SEC v. Gunn*, 3:08-CV-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010).  The decision whether to award prejudgment interest is a matter of the district court's discretion.  *SEC v. United Energy Partners*, *Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004).

The PJI for Haarman's disgorgement ($1,326,675) is $741,616.24.  Ex. 1, Warren Dec. at ¶ 26 [APP. 009-10].  The PJI for Duke's individual disgorgement ($1,326,875) is $741,730.90.  *Id.* The Commission calculated Haarman's and Duke's respective PJI beginning on the date they each

received their respective bonuses and fees through March 18, 2025.  *Id.*

**C.**    **The Court Should Impose Civil Penalties against Haarman and Duke.**

Section 209(e) of the Advisers Act authorizes courts to impose civil penalties.  15 U.S.C.

§ 80b-9(e).  The section establishes an escalating, three-tier structure for securities violations

depending upon the egregiousness of the defendant's conduct and the risk of substantial losses

created by such conduct.  *Id.*; 17 C.F.R. § 201.1001 (increasing statutory amounts to reflect

inflation).[3]  These penalties are designed to punish individual violators and deter future violations

of the federal securities laws.  This is necessary because without civil penalties, the only financial

risk to violators is the forfeiture of their ill-gotten gains.  *Voight*, 2021 WL 5181062, at *14

(quotations and citations omitted).

The third tier of penalties provided by the Advisers Act—which require that the violation

involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"

(the basis for second tier penalties) **and** that "such violation directly or indirectly result in

substantial losses or create a significant risk of substantial losses to other persons"—provides that

sanctions for each violation committed by a defendant who is a natural person shall not exceed the

greater of either (1) $236,451 or (2) the gross amount of the defendant's pecuniary gain.  15 U.S.C.

§ 80b-9(e)(2)(C); 17 C.F.R. § 201.1001.  Although the statutory tier determines the maximum

penalty allowed per violation, the actual amount of the penalty to be imposed is left to the Court's

discretion.  *See Voight*, 2021 WL 5181062, at *14 (citing *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir.

2005)).

---

[3] Securities Act Section 20(d) and Exchange Act Section 21(d)(3) prescribe the same three-tier penalty structure for violations of the respective acts.  Therefore, these are additional statutory bases for an award of a civil penalty against Duke.  Doc. 82, MSJ Order, at 14, 18, 20.  Because those claims do not apply to Haarman, the Commission's analysis focuses on the Advisers Act, which applies to both Haarman and Duke.

The following factors are relevant in determining whether a civil penalty is appropriate and, if so, in what amount: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.  *SEC v. Fox*, No. 4:17-CV-271, 2018 WL 1210858, at *2 (E.D. Tex. March 8, 2018); *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012).[4]

The Commission requests that the Court order third-tier civil penalties in the amount of Haarman's and Duke's respective gross pecuniary gain—the same amount of their disgorgement described in Section II.B, above.  The record in this case provides ample factual justification for imposing third-tier penalties.  As outlined above, the conduct of Haarman and Duke—in employing fraudulent actions and deceit, which inflicted substantial losses on investors—was egregious.  In particular, with an utter disregard for their fiduciary duties and contrary to their statements to investors, Haarman and Duke surreptitiously paid themselves more than $2.5 million dollars from Fund assets.  *Id.* at 5, 25-28.  Their scienter was particularly pronounced as they structured the transactions to falsely portray that they were receiving payments from third parties instead of from the Fund's assets.  *Id.* at 27.  Haarman's and Duke's conduct resulted in substantial losses to investors both in the loss of investor capital that went to Haarman and Duke and in the complete failure of the Fund, which is no longer a going concern and has no assets.  Doc. 82, at 10; Ex. 3,

---

[4] Courts have also considered such additional factors as a defendant's cooperation with law enforcement authorities and whether the defendant has admitted wrongdoing.  *Life Partners Holdings, Inc.*, 71 F. Supp. 3d at 623; *Offill,* 2012 WL 1138622, at *3; *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 280 (E.D.N.Y. 2011), *vacated in part on other grounds*, 738 F.3d 14 (2d Cir. 2013).

Haarman Depo. 198:2-7 [APP. 023]; Ex. 2, Duke Depo. 167:7-16 [APP. 016].  Their conduct was recurrent as evidenced by the five separate transactions that they designed for their unauthorized benefit.  Doc. 82, MSJ Order at 5-7, 29.  Finally, neither Defendant has expressed any remorse for his conduct.  Therefore, under the circumstances of this case, it is reasonable and appropriate for the Court to order Haarman and Duke to each pay a civil penalty equal to their respective amounts of gross pecuniary gain.  *See, e.g.*, *SEC v. Jaitley*, No. 1:21-CV-0832-DAE, 2024 WL 5118487, at *3 (W.D. Tex. Nov. 26, 2024), *report and recommendation adopted*, 2024 WL 5088389, at *4 (W.D. Tex. Dec. 12, 2024) (imposing penalties equal to defendant's gross pecuniary gain); *SEC v. Meta 1 Coin Tr.*, No. 1:20-CV-273-RP, 2023 WL 3069768, at *5 (W.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 1:20-CV-273-RP, 2023 WL 3089975 (W.D. Tex. Mar. 14, 2023) (same).

### III.
### CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court: grant this motion, enter the proposed Final Judgment attached hereto as Exhibit A, and grant Plaintiff such further relief as to which it may be entitled.

Dated: September 30, 2025.        Respectfully submitted,

*Tyson M. Lies*
TYSON M. LIES
Texas Bar No. 24087927
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Ph: 817-978-1421
Fax: 817-978-4927
liest@sec.gov

ATTORNEY FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, I electronically filed the foregoing via the Court's CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that I served a true and correct copy of the foregoing document and the notice of electronic filing via electronic mail on all non-CM/ECF parties and/or their counsel as detailed below:

| *Via email to patrick@dynevolve.com and pduke@apegtx.com*<br><br>Patrick Duke, *Pro Se* | *Via email to mford@fordobrien.com*<br><br>Matthew Ford<br>Counsel for Defendants Paul W. Haarman and APEG Energy GP, LP |
|---|---|

*Tyson M. Lies*
TYSON M. LIES